D.R. HORTON, INC., A TEXAS CORPORATION DOING BUSINESS IN
THE STATE OF NEVADA, APPELLANT, *v.* MICHAEL GREEN,
AN INDIVIDUAL; AND JOHN VELICKOFF AND TRACY
VELICKOFF, INDIVIDUALLY AND AS HUSBAND AND WIFE,
RESPONDENTS.

No. 40102

September 13, 2004          96 P.3d 1159

*Mead & Pezzillo, LLP,* and *Leon F. Mead II,* Las Vegas, for
Appellant.

*Canepa Riedy Rubino & Lattie* and *Scott K. Canepa* and *Terry
W. Riedy,* Las Vegas, for Respondents.

Before Becker, Agosti and Gibbons, JJ.

# OPINION

*Per Curiam:*

Appellant D.R. Horton, Inc., a real property developer, and respondents Michael Green, John Velickoff, and Tracy Velickoff (jointly the Homebuyers) entered into home purchase agreements containing a mandatory binding arbitration provision.[1] In the ensuing dispute over the provision's validity, the district court found that the arbitration clause was adhesive and unconscionable. On appeal, Horton argues that the district court erred in concluding that the arbitration clause was unenforceable. We disagree. We conclude that the clause is void as unconscionable and affirm the district court's order denying Horton's motion to compel arbitration.[2]

## *FACTS AND PROCEDURAL HISTORY*

The arbitration clause dispute arose from a construction defect controversy between the Homebuyers and Horton. These parties entered into home purchase agreements containing a mandatory arbitration provision. In each case, a two-page form sales agreement constituted the agreement between the parties. The agreement was printed in a very small font. The front page contained the sales price, other financial information, and the signature lines. A clause at the bottom in capitalized bold letters stated that:

> **PARAGRAPHS 10 THROUGH 27 CONSTITUTE A PART OF THIS CONTRACT.**[3]

The back page included, among other things, a limited warranty clause and a mandatory binding arbitration provision. The font size on the back page was smaller than the font utilized on the front page. The arbitration provision read as follows:

> **11.   THIS CONTRACT IS SUBJECT TO THE NEVADA ARBITRATION RULES GOVERNED UNDER NEVADA REVISED STATUTE CHAPTER 38 AND THE FEDERAL ARBITRATION ACT.**
>
> Buyer and Seller agree that any disputes or claims between the parties, whether arising from a tort, this Contract, any breach of this Contract or in any way related to this transaction, including but not limited to claims or disputes arising under the terms of the express limited warranty referenced in Paragraph 10 of this Contract, shall be settled by binding arbitration under the direction and procedures established by the American

---

[1]Although the Homebuyers signed separate contracts, the contracts contained identical arbitration provisions.

[2]The Homebuyers concede on appeal that the agreement was not an adhesion contract, as evidence indicated that other homebuyers successfully bargained to have the arbitration clause deleted from the agreement.

[3]For illustrative purposes we have duplicated the size of the print.

Arbitration Association "Construction Industry Arbitration Rules" except as specifically modified herein or dictated by applicable statutes including the Nevada Revised Statute Chapter 38 and/or the Federal Arbitration Act. If Buyer does not seek arbitration prior to initiating any legal action, Buyer agrees that Seller shall be entitled to liquidated damages in the amount of ten thousand dollars ($10,000.00). Any dispute arising from this Contract shall be submitted for determination to a board of three (3) arbitrators to be selected for each such controversy. The decision of the arbitrators shall be in writing and signed by such arbitrators, or a majority of them, and shall be final and binding upon the parties. Each party shall bear the fees and expenses of counsel, witnesses and employees of such party, and any other costs and expenses incurred for the benefit of such party. All other fees and expenses shall be divided equally between Buyer and Seller.

With the exception of the paragraph title, which was in bold capital letters like the other contract headings, nothing drew special attention to this provision.

Green testified that he only read the first page of the document. He indicated that he did not read the second page because "it was all fine print" and Horton's agent told him that it was a standard contract. The Velickoffs indicated that they read both sides of the contract, including the arbitration provision. They testified, however, that they did not understand that the provision constituted a waiver of their right to a jury trial or that it impacted their statutory rights under NRS Chapter 40 involving construction defect claims. Neither Green nor the Velickoffs understood that they would be required to fund one-half of the expenses of the arbitration and that these expenses could be more costly than standard litigation.

In 2000, the Homebuyers notified Horton that they intended to bring various construction defect claims against Horton, and the matter proceeded to mediation pursuant to NRS 40.680. The mediator concluded that the mediation process was unsuccessful because Horton acted in bad faith. On September 14, 2001, Horton sought arbitration of the Homebuyers' construction defect claims. The Homebuyers answered Horton's demand for arbitration and requested punitive damages in addition to monetary damages for the defects. On October 5, 2001, while the parties were disputing the list of potential arbitrators, the Homebuyers filed a complaint against Horton in district court for declaratory relief, requesting that the district court proclaim the arbitration provision unenforceable. Horton moved to compel arbitration, which the Homebuyers opposed.

[Headnote 1]

After hearing arguments and conducting an evidentiary hearing, the district court denied Horton's motion to compel arbitration, essentially granting judgment in favor of the Homebuyers on the declaratory relief action. The district court ruled that the arbitration clause was adhesive and fell short of Nevada's standards regarding

jury trial waivers.[4] The district court also determined that the clause was procedurally and substantively unconscionable because, if enforced, it operated to waive the right to a jury trial without even mentioning that right, and it failed ''to inform homeowners of the costs associated with arbitration and the substantial difference between arbitration fees and filing fees for suits filed under Chapter 40.'' The district court struck the arbitration clause, reasoning that absent such disclosures, the Homebuyers could not give an informed consent. This appeal followed.

## DISCUSSION

### Standard of review

Under NRS 38.247(1)(a), an order denying a motion to compel arbitration is directly appealable. The party moving to enforce an arbitration clause has the burden of persuading the district court that the clause is valid.[5] Contractual unconscionability involves mixed questions of law and fact.[6] A trial court's factual findings in support of a finding of unconscionability are accepted upon review so long as they are supported by substantial evidence.[7] Whether, given the trial court's factual findings, a contractual provision is unconscionable is a question of law subject to de novo review.[8]

### Unconscionability

Strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation.[9] Nevertheless, courts may invalidate unconscionable arbitration provisions.[10] ''Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a . . . clause as unconscionable.''[11] However, less evidence of substantive uncon-

---

[4]We note that the district court erred in analyzing this case as a waiver of the right to a jury trial. The contract contains no such waiver clause, and our case law regarding enforceability of jury trial waivers is not applicable to the enforceability of a binding arbitration clause.

[5]*Obstetrics and Gynecologists v. Pepper,* 101 Nev. 105, 108, 693 P.2d 1259, 1261 (1985).

[6]*Patterson v. ITT Consumer Financial Corp.,* 18 Cal. Rptr. 2d 563, 565 (Ct. App. 1993).

[7]*Lovey v. Regence Blueshield of Idaho,* 72 P.3d 877, 881 (Idaho 2003).

[8]*Id.*

[9]*Burch v. Dist. Ct.,* 118 Nev. 438, 442, 49 P.3d 647, 650 (2002).

[10]*Id.* at 443, 49 P.3d at 650.

[11]*Id.*

scionability is required in cases involving great procedural unconscionability.[12] A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.[13] Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences.[14] As the Ninth Circuit has recognized, "substantive unconscionability focuses on the one-sidedness of the contract terms."[15]

The district court determined that the arbitration clause was unenforceable because the Homebuyers had no realistic bargaining opportunity; that is, the agreement was an adhesion contract. This finding is not supported by substantial evidence. In fact, the record demonstrates that it was possible to negotiate for deletion of the arbitration provision. Nevertheless, the district court also concluded that the provision was procedurally deficient because it failed to indicate that by agreeing to binding arbitration, the Homebuyers were giving up significant rights under Nevada law. The district court also considered the fact that the clause was in fine print and indistinguishable from many other contractual provisions, and thus its significance was downplayed. Finally, the district court found that Horton's sales agent referred to the contract as a form agreement containing standard language, leading the Homebuyers to believe that the clause was simply a formality that did not significantly affect their rights. Based upon these findings, the district court concluded that the arbitration provision was procedurally unconscionable.

Horton argues that the district court erroneously relied on NRS 104.2302 and *Burch v. District Court*[16] in invalidating the arbitration provision because NRS 104.2302 applies only to the sale of goods, not real estate, and *Burch* is distinguishable because it involved an adhesion contract. Horton contends that the district court wrongfully focused on the absence of negotiation instead of examining whether the Homebuyers had a realistic bargaining op-

---

[12]*Armendariz v. Foundation Health Psychcare,* 6 P.3d 669, 690 (Cal. 2000).

[13]*Id.* at 443-44, 49 P.3d at 650; *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir.), *cert. denied,* 535 U.S. 1112 (2002).

[14]*American Airlines, Inc. v. Wolens,* 513 U.S. 219, 249 (1995) (O'Connor, J., concurring).

[15]*Ting v. AT&T,* 319 F.3d 1126, 1149 (9th Cir.), *cert. denied,* 540 U.S. 811 (2003); *Circuit City Stores, Inc.,* 279 F.3d at 893.

[16]118 Nev. 438, 49 P.3d 647.

portunity. According to Horton, the large disparity between the parties' financial strength does not equate to unequal bargaining power. Consequently, the Homebuyers could have chosen another developer in the same area. In addition, Horton notes that the facts established that it was possible to eliminate the arbitration provision from the contract. Because of these factors, Horton asserts that the contract at issue here is not an adhesion contract and *Burch* is inapplicable.

As noted above, we agree with Horton's arguments regarding unequal bargaining power and that the district court erred in concluding that the agreement was procedurally unconscionable as an adhesion contract. Horton also correctly points out that NRS 104.2302, which is part of Nevada's Uniform Commercial Code provisions and pertains to unconscionable contracts, does not apply to the sale of a home because homes are not "goods" under the Uniform Commercial Code[17] and NRS 104.2302 applies only to goods.[18] However, Horton's argument assumes that unequal bargaining power is the sole basis for finding the agreement to be procedurally unconscionable under *Burch* and striking the arbitration provision. We disagree.

The arbitration provision states:

### 11. THIS CONTRACT IS SUBJECT TO THE NEVADA ARBITRATION RULES GOVERNED UNDER NEVADA REVISED STATUTE CHAPTER 38 AND THE FEDERAL ARBITRATION ACT.

Buyer and Seller agree that any disputes or claims between the parties, whether arising from a tort, this Contract, any breach of this Contract or in any way related to this transaction, including but not limited to claims or disputes arising under the terms of the express limited warranty referenced in Paragraph 10 of this Contract, shall be settled by binding arbitration under the direction and procedures established by the American Arbitration Association "Construction Industry Arbitration Rules" except as specifically modified herein or dictated by applicable statutes including the Nevada Revised Statute Chapter 38 and/or the Federal Arbitration Act. If Buyer does not seek arbitration prior to initiating any legal action, Buyer agrees that Seller shall be entitled to liquidated damages in the amount of ten thousand dollars ($10,000.00).

---

[17]*See* NRS 104.2102.

[18]The reference to NRS 104.2302 in *Burch* was a general citation for the proposition that courts may refuse to enforce unconscionable contracts. 118 Nev. at 442 n.9, 49 P.3d at 650 n.9.

Any dispute arising from this Contract shall be submitted for determination to a board of three (3) arbitrators to be selected for each such controversy. The decision of the arbitrators shall be in writing and signed by such arbitrators, or a majority of them, and shall be final and binding upon the parties. Each party shall bear the fees and expenses of counsel, witnesses and employees of such party, and any other costs and expenses incurred for the benefit of such party. All other fees and expenses shall be divided equally between Buyer and Seller.

The contracts Horton presented to the Homebuyers were difficult to read and the arbitration clause was on the back page. The signature lines, in contrast, were on the front page. Other than the fact that the paragraph headings relating to the arbitration provision were in bold capital letters, just like every other heading in the contracts, nothing drew attention to the arbitration provision. To the contrary, although the termite and drainage provisions were capitalized throughout, the body of the arbitration clause was not capitalized. Instead, it was in an extremely small font. As in *Burch,* the arbitration provision was inconspicuous. Thus, even if an individual read the contract, there was nothing to draw the reader's attention to the importance of the arbitration provision. This failure to highlight the arbitration agreement, together with the representations made by Horton's agent that these were standard provisions, are key features in the district court's finding of procedural unconscionability.

Finally, even if any home purchasers noticed and read the arbitration provision, as did the Velickoffs, they would not be put on notice that they were agreeing to forgo important rights under state law. In addition to the right to a jury trial, under NRS 40.655(1)(a), a construction defect claimant may recover attorney fees or other damages proximately caused by the construction defect controversy. In general, the right to request attorney fees would still exist in an arbitration proceeding because " '[b]y agreeing to arbitrate a statutory claim . . . , a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' "[19] However, the arbitration provision provides that each party is to bear its own attorney fees and expenses. While Horton did not have a duty to explain in detail each and every right that the Homebuyers would

---

[19]*Kindred v. Dist. Ct.,* 116 Nev. 405, 414, 996 P.2d 903, 909 (2000) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)).

be waiving by agreeing to arbitration, to be enforceable, an arbitration clause must at least be conspicuous and clearly put a purchaser on notice that he or she is waiving important rights under Nevada law.[20]

Our 1989 decision in *Tandy Computer Leasing v. Terina's Pizza*[21] is relevant to our analysis of the arbitration provision in this case. In *Tandy Computer Leasing,* a computer equipment lessor brought an action in Texas against a family of Nevada pizza parlor owners.[22] The lessor initiated the action in Texas pursuant to a forum selection clause in the lease agreement and subsequently sought to enforce the judgment in Nevada.[23] We invalidated the forum selection clause, in part because of the lessor's failure to make the clause conspicuous. We noted that binding a consumer under such circumstances was unrealistic because

> [the] clause was buried on the very bottom of the back page of the lease agreement, in very fine print, in a paragraph labelled MISCELLANEOUS. . . . Nothing on the front page notifies the reader of the specific forum selection clause on the back page. The clause is not even in bold print.[24]

In the instant case, the district court did not err in finding procedural unconscionability. The arbitration provision was inconspicuous, downplayed by Horton's representative, and failed to adequately advise an average person that important rights were being waived by agreeing to arbitrate any disputes under the contract. We conclude that the district court did not err in finding the arbitration clause to be procedurally deficient.

We now turn to the issue of substantive unconscionability. Two provisions of the agreement implicate substantive unconscionability: the $10,000 penalty for refusing to arbitrate, and the requirement that each party pay equally for the costs of arbitration.

*Ting v. AT&T,*[25] a recent Ninth Circuit case applying California law, provides guidance in determining substantive unconscionability. In *Ting,* the Ninth Circuit invalidated, among other things, a

---

[20]Because the arbitration clause failed to give proper notice, Horton's arguments regarding Green's failure to read the agreement or the Velickoffs' failure to ask questions about arbitration lack merit. Nothing in the record suggests that Green or the Velickoffs were aware of, or had reason to be aware of, the rights they were forgoing by agreeing to binding arbitration.

[21]105 Nev. 841, 784 P.2d 7 (1989).

[22]*Id.* at 842, 784 P.2d at 7.

[23]*Id.*

[24]*Id.* at 843, 784 P.2d at 8.

[25]319 F.3d 1126 (9th Cir.), *cert. denied,* 540 U.S. 811 (2003).

contract provision requiring customers to split arbitration fees with AT&T.[26] The Ninth Circuit held that ''[w]here an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.' ''[27] The court went on to say that:

> ''[a]lthough parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which a stronger party may . . . impose the arbitration forum on the weaker party without accepting that forum for itself.''[28]

*Ting* is similar to the case at bar. Here, the arbitration provision is one-sided because it contained a liquidated damages provision penalizing the Homebuyers if they chose to forgo arbitration but imposed no such penalty upon Horton. Although the one-sidedness of the provision is not overwhelming, it does establish substantive unconscionability, especially when considered in light of the great procedural unconscionability present in this case.

As for Horton's argument that the district court erroneously invalidated the arbitration provision because it did not disclose the potential arbitration costs, this was only one of the factors the district court considered in finding the provision unconscionable. While an arbitration agreement's silence regarding potentially significant arbitration costs does not, alone, render the agreement unenforceable, ''the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her . . . rights in the arbitral forum.''[29] Ordinary consumers may not always have the financial means to pursue their legal remedies, and significant arbitration costs greatly increase that danger. In such a circumstance, the contract would lack the ''modicum of bilaterality'' discussed in *Ting*. Thus, the district court properly considered Horton's failure to disclose potential arbitration costs in examining the asymmetrical effects of the provision. We agree with the *Ting* rationale and conclude that the arbitration provision was also substantively unconscionable.

## CONCLUSION

We conclude that the arbitration provision was procedurally and substantively unconscionable because it was inconspicuous, one-sided and failed to advise the Homebuyers that significant rights

---

[26]*Id.* at 1148-49.

[27]*Id.* at 1149.

[28]*Id.* (quoting *Armendariz v. Foundation Health Psychcare,* 6 P.3d 669, 692 (Cal. 2000)).

[29]*Green Tree Financial Corp.-Ala. v. Randolph,* 531 U.S. 79, 90 (2000).

under Nevada law would be waived by agreeing to arbitration. While the absence of language disclosing the potential arbitration costs and fees, standing alone, may not render an arbitration provision unenforceable, the district court properly considered that as a factor in invalidating the provision. As the arbitration provision is unenforceable, we affirm the district court's order denying Horton's motion to compel arbitration.