# IN THE SUPREME COURT OF THE STATE OF NEVADA

FAT HAT, LLC, D/B/A 1923 BOURBON & BURLESQUE BY HOLLY MADISON; ICE LOUNGE LAS VEGAS, LLC; J.F. SABES INVESTMENT, INC.; ROBERT W. SABES; AVI KOPELMAN; NOEL BOWMAN; AND ROBERT FREY,
Appellants,
vs.
MICHELLE DITERLIZZI; BURGENDY CANDACE KIRTZ; MONICA ALEXANDRA KLUS; SOPHIA MONICA; MEGAN HEBERT; AND PLAMENA MIHAYLOVA,
Respondents.

No. 68479

FILED

SEP 2 1 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S·Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

This is an appeal from a district court order denying a motion to compel arbitration. Eighth Judicial District Court, Clark County; Valerie Adair, Judge. This case is appropriate for submission on the briefs without oral argument. NRAP 34(f)(1). We have jurisdiction under NRS 38.247(1)(a), and affirm in part, reverse in part, and remand.

Appellants Fat Hat, LLC, Ice Lounge Las Vegas, LLC, J.F. Sabes Investment, Inc., Robert W. Sabes, Avi Kopelman, Noel Bowman, and Robert Frey (collectively, "Fat Hat"), owned and operated a burlesque nightclub located in the Mandalay Bay Hotel and Casino in Las Vegas. Respondents worked at the nightclub as dancers, bartenders, or cocktail waitresses. Respondents sued Fat Hat after allegedly discovering that Fat

16-29347

Hat had been secretly filming them in their dressing areas as they changed attire. Fat Hat moved to compel arbitration based on the arbitration clauses in respondents' independent contractor or employment contracts. The district court denied Fat Hat's motion without explanation, and Fat Hat appeals.

On appeal, Fat Hat argues first that an arbitrator, not the district court, must determine whether the arbitration provisions in the contracts are enforceable. Fat Hat failed to make this argument in district court. As this court does not entertain "issues raised for the first time on appeal," *Laird v. State Pub. Emps. Ret. Bd.*, 98 Nev. 42, 46, 639 P.2d 1171, 1173 (1982), we do not address Fat Hat's challenge to the district court, as opposed to the arbitrator, deciding arbitrability.

As noted, the district court did not give reasons for denying Fat Hat's motion to compel arbitration. Respondents argued in district court that the arbitration provisions in their contracts were void and unenforceable under NRS 597.995. As its second argument for reversal, Fat Hat argues that NRS 597.995 does not apply to respondents' contracts because its legislative history demonstrates that the statute is limited to consumer contracts.[1] To interpret a statute, this court "first inquire[s] whether an ambiguity exists in the language of the statute. If the words of the statute have a definite and ordinary meaning, this court will not look beyond the plain language of the statute, unless it is clear that this meaning was not intended." *State v. Quinn*, 117 Nev. 709, 713, 30 P.3d

---

[1]Fat Hat makes no argument that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, applies. We therefore do not address NRS 597.995's validity or application under the FAA. *But see Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 683 (1996).

1117, 1120 (2001); *see Wheble v. Eighth Judicial Dist. Court*, 128 Nev. 119, 122, 272 P.3d 134, 136 (2012).

The text of NRS 597.995 and that of Nevada's general arbitration statute, NRS 38.219, do not reveal an ambiguity with respect to NRS 597.995's broad scope and, in fact, militate against limiting NRS 597.007 to consumer contracts as Fat Hat urges. NRS 38.219(1) broadly states that, "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable *except as otherwise provided in NRS 597.995 . . . .*" (emphasis added). NRS 597.995(1) provides that "an agreement which includes a provision which requires a person to submit to arbitration any dispute arising between the parties to the agreement must include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." If there is no specific authorization, then the arbitration provision is "void and unenforceable." NRS 597.995(2). NRS 597.995(3) creates an exception to NRS 597.995(1) and NRS 597.995(2), providing that they do not apply to collective bargaining agreements (CBAs). If NRS 597.995 only applied to consumer contracts, NRS 597.995(3) would be unnecessary. *See Clark Cty. v. S. Nev. Health Dist.*, 128 Nev. 651, 656, 289 P.3d 212, 215 (2012) ("Statutes should be read as a whole, so as not to render superfluous words or phrases or make provisions nugatory.").

Accepting *arguendo* that NRS 597.995 applies, Fat Hat alternatively argues that all of respondents' contracts complied with NRS 597.995. However, the contracts for respondents DiTerlizzi, Klus, Monica, and Kirtz did not contain the "specific authorization" for the arbitration provision in their respective contracts that NRS 597.995 demands.

Though the arbitration provision immediately preceded the signature line on the last page for all the contracts, that was a general signature line indicating consent to all the terms of the contract. Thus, those signatures do not qualify as specific authorizations for the arbitration provision. Although Kirtz initialed at the bottom of the page with the arbitration provision, she initialed at the bottom of every page; thus, her initials fail to demonstrate that she affirmatively agreed to the arbitration provision. Because Fat Hat's contracts with respondents DiTerlizzi, Klus, Monica, and Kirtz failed to include the specific authorization NRS 597.995 requires, the arbitration provisions in those four contracts are void and unenforceable, and we affirm the district court's order denying arbitration as to them.

Respondents Hebert and Mihaylova, on the other hand, signed identical "Arbitration Agreement[s]" with Fat Hat that complied with NRS 597.995. In addition to a signature line at the end of the contracts, both Hebert and Mihaylova were required to fill in their names and addresses in the blank spaces of the provision, explicitly stating that the agreement to arbitrate was effective. Thus, the arbitration provisions in Hebert and Mihaylova's arbitration agreements are valid and enforceable.

In upholding the validity of Hebert and Mihaylova's arbitration agreements, we reject their claim that the arbitration agreements were not valid contracts because they did not understand what they were signing. *See Campanelli v. Conservas Altamira, S.A.*, 86 Nev. 838, 841, 477 P.2d 870, 872 (1970) ("Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is

conclusively presumed to know its contents and to assent to them . . . ." (internal quotations omitted)). Hebert's and Mihaylova's further argument that Fat Hat violated paragraphs 3 and 7 of their arbitration agreements because it did not advise them to consult with counsel before signing or explain to them that they had 21 days to consider the agreement and 16 days to rescind after signing fail under the principles stated in *Campanelli*, as outlined above. Paragraph 7 provides that by signing the agreement the applicant, "acknowledges that Employer has advised the Applicant to consult with counsel prior to signing this agreement." Similarly, paragraph 3 affords the right of review and rescission; it does not state that Fat Hat would explain the section to the employees. *See Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 776, 121 P.3d 599, 603 (2005) ("Generally, when a contract is clear on its face, it will be construed from the written language and enforced as written.") (internal quotations omitted). Finally, we decline to address respondents Hebert and Mihaylova's argument that the arbitration agreements were procedurally unconscionable because they failed to allege that the agreements were substantively unconscionable and both "must be present in order for a court to exercise its discretion to refuse to enforce a . . . clause as unconscionable." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004) (alteration in original) (internal quotation omitted)).

Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Specifically, we affirm the order denying arbitration as to respondents DiTerlizzi, Klus, Monica,

and Kirtz but reverse and remand as to respondents Hebert and Mihaylova, for entry of an order compelling arbitration as to them.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Pickering

cc:   Hon. Valerie Adair, District Judge
       Ara H. Shirinian, Settlement Judge
       JK Legal & Consulting, LLC
       Lipson Neilson Cole Seltzer & Garin, P.C.
       Garcia-Mendoza & Snavely, Chtd.
       Eighth District Court Clerk