# IN THE SUPREME COURT OF THE STATE OF NEVADA

FQ MEN'S CLUB, INC., (D/B/A RENO MEN'S CLUB, THE MEN'S CLUB, AND MEN'S CLUB OF RENO), A NEVADA CORPORATION; FRENCH QUARTER, INC., (D/B/A RENO MEN'S CLUB, THE MEN'S CLUB, AND MEN'S CLUB OF RENO), A NEVADA CORPORATION; THE FRENCH QUARTER, INC., A NEVADA CORPORATION; FRENCH QUARTER RESTAURANT, INC., A NEVADA CORPORATION; AND EUGENE CANEPA, AN INDIVIDUAL,
Appellants,
vs.
JANE DOE DANCERS I, II AND III, INDIVIDUALLY AND ON BEHALF OF CLASS OF SIMILARLY SITUATED INDIVIDUALS,
Respondents.

No. 79265

FILED

SEP 1 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a motion to compel arbitration in a labor dispute. Second Judicial District Court, Washoe County; David A. Hardy, Judge.

Respondents Jane Doe Dancers I, II, and III (hereinafter, the Dancers) each signed a licensing agreement before performing as exotic dancers for FQ Men's Club, Inc. (the Men's Club), a restaurant and adult entertainment establishment in downtown Reno. Thereafter, in December 2015, the Men's Club changed its policies and required the already-contracted Dancers to sign two documents pertinent to this appeal: (1) a memorandum, requiring the Dancers to classify as either employees or

20-34327

independent contractors and, if the Dancers elected to work as independent contractors, (2) the Guest Cabaret Performer Licensing Agreement (GCPLA), which contained an arbitration agreement and class action waiver.

In December 2016, the Dancers filed a proposed class action complaint against the Men's Club for failure to pay minimum hourly wage, as required by state and federal law, and for unjust enrichment. The Men's Club moved to compel arbitration pursuant to the GCPLA. Following an evidentiary hearing on the motion, the district court entered its order denying the Men's Club's motion to compel arbitration, which invalidated the GCPLA's arbitration provision as procedurally and substantively unconscionable. The Men's Club appealed the district court's order. We vacated the district court order and remanded with instructions for the district court to reconsider the motion in light of *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 192, 415 P.3d 32, 42 (2018) (overruling Nevada precedent to the extent the unconscionability rules established therein "apply only to arbitration agreements or, in practice, have a disproportionate effect on arbitration agreements" when the Federal Arbitration Act (FAA) controls). *See FQ Men's Club, Inc. v. Jane Doe Dancers, I, II and III*, Docket No. 74037 (Order to Vacate and Remand, Dec. 21, 2018). On remand, the district court again denied the Men's Club's motion to compel arbitration, finding the GCPLA procedurally and substantively unconscionable. The Men's Club appeals.

We reject the Men's Club's arguments concerning the district court's unconscionability determinations. Because we conclude that the GCPLA is procedurally and substantively unconscionable, we affirm the district court's order denying the Men's Club's motion to compel.

(O) 1947A

## DISCUSSION

*Unconscionability of the GCPLA*

The Men's Club argues that the district court erred in invalidating the GCPLA based on substantive and procedural unconscionability. "Contractual unconscionability involves mixed questions of law and fact." *D.R. Horton Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004), *overruled on other grounds by Ballesteros*, 134 Nev. 180, 415 P.3d 32. We defer to the district court's underlying factual findings of unconscionability "so long as they are supported by substantial evidence." *Id.* "Whether, given the trial court's factual findings, a contractual provision is unconscionable is a question of law subject to de novo review." *Id.*

The FAA "preempts state laws that single out and disfavor arbitration."[1] *Ballesteros*, 134 Nev. at 188, 415 P.3d at 40. Accordingly, where the FAA applies, district courts may invalidate an arbitration provision under a generally applicable contract defense, such as unconscionability—but it may not apply that defense "in a fashion that disfavors arbitration." *Id.* at 189, 415 P.3d at 40 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)); *see also* 9 U.S.C. § 2 (2018) (detailing that an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract" (emphasis added)).

"A contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent

---

[1]The parties acknowledged the applicability of the FAA to this matter in the prior appeal. *See FQ Men's Club*, Docket No. 74037, at *4 n.2.




party." *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.*, 89 Nev. 414, 418, 514 P.2d 654, 657 (1973). Generally, "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *Ballesteros*, 134 Nev. at 190, 415 P.3d at 40. That said, procedural and substantive unconscionability operate on a sliding scale, such that "less evidence of substantive unconscionability is required" where the procedural unconscionability is great. *Burch v. Second Judicial Dist. Court*, 118 Nev. 438, 444, 49 P.3d 647, 650 (2002).

### *The GCPLA is procedurally unconscionable*

The Men's Club argues that substantial evidence does not support the district court's findings as to procedural unconscionability, and further challenges several of the district court's conclusions. "A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton*, 120 Nev. at 554, 96 P.3d at 1162. Procedural unconscionability also considers "the manner in which the contract or the disputed clause was presented and negotiated[,]" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1282 (9th Cir. 2006), as well as whether the drafting party misrepresented the nature or effect of the contract, *see Gonski v. Second Judicial Dist. Court*, 126 Nev. 551, 559, 245 P.3d 1164, 1170 (2010), *overruled on other grounds by Ballesteros*, 134 Nev. 180, 415 P.3d 32.

The district court made several determinations with respect to procedural unconscionability. First, the district court concluded that "[t]he Men's Club did not create a symmetrical transaction process to effectuate the GCPLA and, as a result, the dancers were not given a meaningful opportunity to agree to its terms." To support this, the district court

explained that the Men's Club surprised the Dancers with the memorandum and GCPLA as they arrived for their routine work shift; the Men's Club hostesses required the Dancers to sign the documents "in a dimly lit and noisy entryway as front door hostesses, customers, and other dancers engaged in club business around them" which "was unconducive to concentration" and "imposed a time constraint"; and the owner of the Men's Club prohibited the Dancers both from removing the documents from the Men's Club to review and from working pursuant to their existing contractual agreement until they signed the documents—which incentivized the Dancers "to sign as quickly as possible to ensure they could begin earning money." The district court continued that "[t]his type of unequal, 'take it or leave it' approach, under which the weaker party is unable to negotiate terms, is indicative of an unconscionable adhesion contract."

The district court further found that the Men's Club misrepresented the GCPLA by instructing the hostesses to inform the Dancers that "they should elect to become Guest Cabaret Performers if they 'wanted to stay the same as they have been.'" Because significant differences existed between the original contract and the GCPLA, including the arbitration provision and the class-action waiver, the district court found that "[t]he hostesses' explanation constituted an inducement for the dancers to sign the GCPLA without review of these changes, further contributing to procedural unconscionability."

Finally, the district court determined that the GCPLA's consequences "were not readily ascertainable on its face due to what appears to be careless drafting." In addition to misspelled words, the district court explained that the omission of essential words and phrases

rendered certain provisions confusing. For example, the district court found the Dancers' right to reject the arbitration clause requiring "all Performers" to sign the written rejection notice within 30 days particularly problematic. Because the Dancers had no way of identifying the other performers who signed the GCPLA, and because the performers signed the GCPLA over a two month period, the district court found that the Dancers could not have possibly complied with this provision.

We now turn to the Men's Club's arguments challenging the district court's determinations. First, the Men's Club contends that the district court's requirement of "a symmetrical transaction process" is contrary to Nevada law because "[i]t is not the duty of a party to explain the legal effects of every provision of a contract," (quoting *CVSM, LLC v. Doe Dancer V*, Docket No. 72627, at *3 (Order of Reversal and Remand, Feb. 25, 2019))). We reject this argument as it mischaracterizes the district court's determination. While the Men's Club correctly points out that the law will not excuse a party's own negligence by failing to review a contract before signing it, *see* 1 Richard A. Lord, *Williston on Contracts* § 4:19 (4th ed. 2007) (detailing that a person cannot avoid the enforcement of a contract by failing to read it unless "a reasonable excuse appears"), we determine that the district court appropriately considered the Men's Club's efforts to deprive the Dancers of a meaningful *opportunity* to understand the GCPLA, *see Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (explaining that "[p]rocedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time").

Second, the Men's Club argues that neither the record nor the law support the district court's findings addressing the environment in

which the Dancers signed the GCPLA. Specifically, the Men's Club argues that the Dancers did not testify to the circumstances of signing the GCPLA, such that the district court's determinations surrounding such circumstances were not supported by substantial evidence. As an initial matter, because the Men's Club exaggerates the breadth of the district court's determination on appeal, the Men's Club's contention that the same is unsupported by law lacks merit.

We further conclude that substantial evidence supports the district court's findings. Here, each of the Dancers testified that they recalled signing the original licensing agreement and memorandum, but that they did not specifically remember signing the GCPLA. However, the Dancers testified to the circumstances of signing the memorandum, explaining that the hostess provided little explanation of the document, the front entryway was dimly lit and packed with people, and that the process for signing the document lasted minutes. In addition, a hostess at the Men's Club testified that the Dancers were provided the memorandum and GCPLA when they came in for their shifts, and told that the documents needed to be signed before they could perform. The hostess agreed that the circumstances in which she presented the memorandum and GCPLA were "hectic"; the Men's Club debuted those documents over the New Years' holiday, where a large number of performers, employees, and customers were entering the building at the same time.

Third, the Men's Club maintains that the district court erred in characterizing the GCPLA as an unconscionable adhesion contract. While we have declined to characterize employment contracts as unconscionable adhesion contracts due to the opportunity for negotiation, *see Kindred v. Second Judicial Dist. Court*, 116 Nev. 405, 411, 996 P.2d 903, 907 (2000),

 

the district court reasoned that the circumstances did not provide for negotiation such that the GCPLA constituted an unconscionable adhesion contract. We decline to expressly address whether an employment contract can be deemed an unconscionable adhesion contract in Nevada, but to the extent we reject the district court's use of the label, we nevertheless conclude that the district court's findings support a determination that the Dancers "lack[ed] a meaningful opportunity to agree to the" GCPLA "because of unequal bargaining power, *as in an adhesion contract*." *D.R. Horton*, 120 Nev. at 554, 96 P.3d at 1162 (emphasis added).

Fourth, the Men's Club claims that substantial evidence does not support the district court's invalidation of the GCPLA based on a theory of misrepresentation. We reject this argument, as the hostess testified that the Men's Club owner provided the hostesses with a separate memorandum outlining how the hostesses were to present the memorandum and GCPLA to the Dancers. Particularly, the hostess memorandum states, "Tell them that if they want to stay the same as they have been for the last 20 years, choose the Guest Cabaret Performer option." Because of the disparities between the original contract and the GCPLA, we conclude that the district court reasonably determined that the hostesses' misrepresentation contributed to its procedural unconscionability determination.

Fifth, the Men's Club argues that draftsmanship quality cannot render the GCPLA procedurally unconscionable. As an initial matter, the Men's Club does not cite to any law to support this proposition, aside from general principles of contract interpretation. Furthermore, if the draftsmanship of a contract prevents a party from "readily ascertain[ing]" the contract and its effects, as the district court found here, then such a consideration properly supports a finding of procedural unconscionability.

*D.R. Horton*, 120 Nev. at 554, 96 P.3d at 1162. Thus, we reject this argument.

Finally, the Men's Club argues that failing to provide the Dancers with copies of the GCPLA cannot make the same procedurally unconscionable. We conclude that this argument lacks merit. First, substantial evidence supports the district court's determination that pursuant to the Men's Club policy, the Dancers were not permitted to take a copy of any of the contractual documents outside the premises of the Men's Club. Both a manager at the Men's Club, as well as one of the club's hostesses, testified to this. Furthermore, to the extent procedural unconscionability takes into account "the manner in which the contract or the disputed clause was presented and negotiated[,]" we conclude that the district court appropriately considered the Men's Club's policy prohibiting the Dancers from removing a copy of the GCPLA from the premises. *Nagrampa*, 469 F.3d at 1282.

Based on the foregoing, we hold that substantial evidence supports the district court's findings, and that such findings render the GCPLA procedurally unconscionable.

*The GCPLA is substantively unconscionable*

The Men's Club claims that the district court failed to make sufficient findings to establish substantive unconscionability. Substantive unconscionability focuses on terms that "are unreasonably favorable to the more powerful party." *Gonski*, 126 Nev. at 563, 245 P.3d at 1172 (quoting 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 2010)); *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (explaining that the substantive "unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party" (internal quotation

marks omitted)). Thus, to determine substantive unconscionability, the focus is on "oppressive terms." *Burch*, 118 Nev. at 444, 49 P.3d at 651 (internal quotation marks omitted).

Regarding substantive unconscionability, the district court found the following:

> [T]he payments provision of the GCPLA indicates a licensing house fee is set forth within the agreement's schedule provision, which is not the case. As such, the fee a dancer may be charged to work a shift remains open to an unbounded amount set at the whim of [the] Men's Club. Similarly, typographical errors in the indemnification provision of the GCPLA make it nearly impossible to determine the scope of breaches for which a dancer may be required to indemnify the Men's Club, exposing dancers to significant financial risk simply by working a shift.

The Men's Club argues that the district court's finding concerning the payments provision only amounts to speculation that the term *could be* unconscionable, and that no evidence established that the Men's Club actually charged an offensive fee. The payments provision provides in relevant part, "Performer shall pay TMCR in advance, a licensing house fee for each Shift for access to the Premises as set forth below (see house fee schedule), or such other amounts as negotiated by the parties hereto." Because an unconscionability determination requires the provisions "existing at the time of the execution of the contract" to be one-sided and oppressive, we conclude that the Men's Club's claim that additional evidence of an offensive fee is required to show unconscionability lacks merit. *Bill Stremmel Motors*, 89 Nev. at 418, 514 P.2d at 657. Based on the language of the provision, and the Men's Club's failure to furnish the promised house fee schedule, we further conclude that substantial

SUPREME COURT
OF
NEVADA

(O) 1947A

evidence supports the district court's determination that the Men's Club's failure to include the promised fee schedule grants the Men's Club the unilateral ability to set and alter the house fee at its discretion. In addition, we conclude that other payment provisions likewise unreasonably favor the Men's Club by permitting it to unilaterally set fees associated with the licensing percentage fee and dance tokens. *See* 8 *Williston on Contracts*, *supra*, § 18:10 (defining substantive unconscionability "as an unfair or unreasonably harsh contractual term which benefits the drafting party at the other party's expense").

The Men's Club also challenges the district court's finding with respect to the indemnification and liability provision. The provision provides that the Dancers agree to indemnify the Men's Club "and all of their respective directors, officers, employees, agents, designees and assignees against any and all loss, damages . . . , claims, demands, liabilities, actions, suits and/or expenses arising out of, or connected with *a customer* any breach of the Licensing Agreement and/or Addendum." (Emphasis added.) We determine that the district court reasonably construed the provision's error of including "a customer" against the Men's Club. *See Anvui, LLC v. G.L. Dragon, LCC*, 123 Nev. 212, 215-16, 163 P.3d 405, 407 (2007) (detailing that an ambiguous contract provision "should be construed against the drafter"). Furthermore, and despite the Men's Club's argument to the contrary, the provision is not reciprocal.

Pursuant to the foregoing, we conclude that the one-sided nature of the GCPLA's provisions render the same substantively unconscionable. *See* 17A Am. Jur. 2d *Contracts* § 272 (2016) (explaining that mutuality "is a paramount consideration when assessing the substantive unconscionability of a contract term"). We further conclude

that substantial procedural unconscionability and sufficient substantive unconscionability operate in tandem to invalidate the GCPLA. Accordingly, we affirm the district court's order denying the Men's Club's motion to compel arbitration.

It is so ORDERED.[2]

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

---

[2]In its reply brief, the Men's Club challenges the district court's authority to consider the unconscionability of the GCPLA, as opposed to just the arbitration provision therein. The Men's Club claims that the GCPLA itself delegates challenges to the enforceability of the contract, aside from the arbitration clause, to the arbitrator, and that such delegation is consistent with United States Supreme Court precedent. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). While persuasive, we conclude that the Men's Club waived this argument by failing to raise it in its opening brief. NRAP 28(c); *see also Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005) (stating that this court need not consider issues raised for the first time in an appellant's reply brief).

cc: Hon. David A. Hardy, District Judge
Lansford W. Levitt, Settlement Judge
Law Offices of Mark Wray
Rusby Law, PLLC
Wetherall Group, LTD.
Washoe Judicial District Court Clerk