134 Nev., Advance Opinion 25

# IN THE SUPREME COURT OF THE STATE OF NEVADA

U.S. HOME CORPORATION, A
DELAWARE CORPORATION,
Appellant,
vs.
THE MICHAEL BALLESTEROS
TRUST; RODRIGO ASANION,
INDIVIDUALLY; FEDERICO AGUAYO,
INDIVIDUALLY; FELIPE ENRIQUEZ,
INDIVIDUALLY; JIMMY FOSTER, JR.,
INDIVIDUALLY; THE GARCIA
FAMILY TRUST; ARNULFO ORTEGO-
GOMEZ, INDIVIDUALLY; ELVIRA
GOMEZ-ORTEGA, INDIVIDUALLY;
JOHN J. OLSON, INDIVIDUALLY;
IRMA A. OLSON, INDIVIDUALLY;
OMAR PONCE, INDIVIDUALLY;
BRANDON WEAVER, INDIVIDUALLY;
JON YATES, INDIVIDUALLY; AND
MINTESNOT WOLDETSADIK,
INDIVIDUALLY,
Respondents.

No. 68810

FILED

APR 12 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion to compel arbitration. Eighth Judicial District Court, Clark County; Joanna Kishner, Judge.

*Reversed and remanded with instructions.*

Payne & Fears LLP and Gregory H. King, Sarah J. Odia, and Chad D. Olsen, Las Vegas,
for Appellant.

Shinnick, Ryan & Ransavage P.C. and Duane E. Shinnick, Courtney K. Lee, Melissa Orr, and Bradley S. Rosenberg, Las Vegas,
for Respondents.

18-14019

Canepa Riedy Abele and Scott K. Canepa, Las Vegas,
for Amicus Curiae Nevada Justice Association.

Wood, Smith, Henning & Berman, LLP, and Janice M. Michaels, T. Blake
Gross, and Anthony S. Wong, Las Vegas,
for Amicus Curiae Nevada Home Builders Association.

---

BEFORE THE COURT EN BANC.

## OPINION

By the Court, PICKERING, J.:

This is an appeal from an order denying a motion to compel arbitration in a construction defect action. The Federal Arbitration Act (FAA) declares written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In this appeal, we must determine whether the FAA governs the arbitration agreement contained in the common-interest community's Covenants, Conditions, and Restrictions (CC&Rs). Because the underlying transaction involved interstate commerce, we hold that it does and that, to the extent Nevada case law concerning procedural unconscionability singles out and disfavors arbitration of disputes over transactions involving interstate commerce, that case law is preempted by the FAA. We therefore reverse and remand for entry of an order directing the parties to arbitration.

### I.

This construction defect action concerns 12 single-family homes located in a southern Nevada common-interest community. Appellant U.S. Home Corporation is the developer. The community is subject to CC&Rs

SUPREME COURT
OF
NEVADA

(O) 1947A

2

that define U.S. Home as a "declarant." The CC&Rs include a section entitled "Arbitration," which states in relevant part:

> **Arbitration.** Any dispute that may arise between: (a) the . . . Owner of a Unit, and (b) the relevant Declarant, or any person or entity who was involved in the construction of any . . . Unit, shall be resolved by submitting such dispute to arbitration before a mutually acceptable arbitrator who will render a decision binding on the parties which can be entered as a judgment in court pursuant to NRS 38.015, et seq.

Three of the respondents are original purchasers who contracted directly with U.S. Home to build and sell them homes. These respondents each signed a Purchase and Sales Agreement (PSA). The PSAs include an arbitration clause, in addition to that contained in the CC&Rs, in which the parties "specifically agree that this transaction involves interstate commerce and that any dispute . . . shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§ 1 *et seq.*) or, if inapplicable, by similar state statute, and not by or in a court of law." The remaining ten respondents are subsequent purchasers who took title subject to the CC&Rs but did not sign a PSA.

Between August 2013 and February 2015, U.S. Home received construction defect pre-litigation notices on behalf of all respondents (the Homeowners). U.S. Home responded with letters demanding arbitration. The Homeowners then filed, in the district court, an NRS Chapter 40 construction defect complaint against U.S. Home seeking damages for breach of contract, breach of implied warranties, and negligence. U.S. Home filed a motion to compel arbitration based on the arbitration clauses in the CC&Rs and PSAs. The district court denied the motion. It held that

Supreme Court
of
Nevada

(O) 1947A

3

the underlying transaction did not involve interstate commerce so the FAA did not apply. Applying state law, the district court invalidated the arbitration agreements as unconscionable. This appeal followed.

## II.

Before considering whether the FAA controls, there is a threshold question we must resolve: Does the arbitration clause in the CC&Rs bind the Homeowners?[1] The Homeowners maintain that U.S. Home cannot compel arbitration based on the CC&Rs because "CC&Rs are not 'contracts,' but covenants that run with the land." Citing *Pinnacle Museum Tower Association v. Pinnacle Market Development, LLC*, 282 P.3d 1217 (Cal. 2012), where the California Supreme Court held that an arbitration provision contained in recorded CC&Rs was enforceable against a non-signatory homeowners' association, U.S. Home argues that, by purchasing homes in a common-interest community, the Homeowners assented to the obligations the CC&Rs impose, including, in this case, the obligation to arbitrate their construction defect claims. To resolve these issues we must consider the nature and purpose of CC&Rs and whether arbitration agreements can properly be contained in CC&Rs.

---

[1]We decline to address U.S. Home's assertion that an arbitrator should determine arbitrability, as it did not raise that issue in district court. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 75-76 (2010) (refusing to review delegation-clause argument first raised on appeal); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (deeming waived any issue that was not raised before the district court). We also note that the Homeowners do not dispute that, if enforceable, the arbitration clause in the CC&Rs is broadly worded enough to encompass their claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

NRS 116.2101 permits the creation of a common-interest community "by recording a declaration executed in the same manner as a deed and, in a cooperative, by conveying the real estate subject to that declaration to the association." A declaration must contain a number of required statements, NRS 116.2105(1), and "may contain any other matters the declarant considers appropriate." NRS 116.2105(2). "CC&Rs become a part of the title to [a homeowner's] property." NRS 116.41095(2). By law, a person who buys a home subject to CC&Rs must receive an information statement warning that "[b]y purchasing a property encumbered by CC&Rs, you are agreeing to limitations that could affect your lifestyle and freedom of choice" and that the CC&Rs "bind you and every future owner of the property whether or not you have read them or had them explained to you." *Id.* The statement must further advise the prospective homebuyer that "[t]he law generally provides for a 5-day period in which you have the right to cancel the purchase agreement." NRS 116.41095(1).

The Uniform Arbitration Act of 2000 (UAA), adopted in Nevada as NRS 38.206-.248, does not require any particular formality to create an enforceable arbitration agreement. Rather, it states simply: "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." UAA § 6(a), 7 U.L.A. 25 (part 1A) (West 2009), *codified in substantially similar form at* NRS 38.219(1). Though arbitration agreements often appear in conventional two-party contracts, they can also arise from other written records where signatures are not required. *See Tallman v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 71, 359 P.3d 113, 119 (2015) ("While NRS 38.219(1) requires that

the arbitration agreement be 'contained in a record,' it does not require that the written record of the agreement to arbitrate be signed."). Indeed, the UAA provides an example of a valid unsigned arbitration agreement— "arbitration provisions contained in the bylaws of corporate or other associations"—and notes that "[c]ourts that have addressed whether arbitration provisions contained in [an organization's] bylaws . . . are enforceable under the UAA have unanimously held that they are." UAA § 6(a), 7 U.L.A. 25 part 1A & cmts.

The same principle—that arbitration agreements can exist in a document not labeled "contract"—has been applied to arbitration clauses in CC&Rs. Thus, in *Pinnacle*, the California Supreme Court compelled arbitration of a dispute between a developer and a homeowners' association based on an arbitration clause in the CC&Rs. 282 P.3d at 1221. In doing so, the court emphasized the contractual nature of terms contained in a recorded declaration of CC&Rs. *Id.* at 1225-26. By purchasing a unit within the common-interest community, the homebuyer manifests acceptance of the CC&Rs. *Id.* "Having a single set of recorded covenants and restrictions that applies to an entire common interest development protects the intent, expectations, and wishes of those buying into the development and the community as a whole by ensuring that promises concerning the character and operation of the development are kept." *Id.* at 1225. It thus comes as "no surprise that courts have described recorded declarations as contracts" and enforced them as such, as between developer/declarants and homeowners. *Id.* at 1227 (collecting cases).

The proposition that CC&Rs create contractual obligations, in addition to imposing equitable servitudes, is widely accepted. *See* Restatement (Third) of the Law of Prop.: Servitudes, ch. 4 intro. note (Am.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Law Inst. 2000) ("One of the basic principles underlying the Restatement is that the function of the law is to ascertain and give effect to the likely intentions and legitimate expectations of the parties who create servitudes, *as it does with respect to other contractual arrangements*.") (emphasis added). By accepting the deed or other possessory interest in a unit, the homeowner manifests his or her assent to the CC&Rs.[2] Thus, even apart from the arbitration setting, numerous cases, including at least one from Nevada, recognize the contractual nature of the obligations imposed by a common-interest community's CC&Rs, which cover such diverse subjects as indemnification, restrictions on resale or use, and dispute resolution. *See Sandy Valley Assocs. v. Sky Ranch Estate Owners Ass'n*, 117 Nev. 948, 954, 35 P.3d 964, 968 (2001), *receded from on other grounds by Horgan v. Felton*, 123 Nev. 577, 170 P.3d 982 (2007) ("the CC&Rs constituted a written contract to convey land"); *see also Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 2 P.3d 1276, 1279 (Ariz. Ct. App. 2000) (recognizing that CC&Rs impose contractual obligations); *Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n*, 14 A.3d 284, 288 (Conn. 2011) (same); *Marino v. Clary Lakes Homeowners Ass'n*, 770 S.E.2d 289, 293 (Ga. Ct. App. 2015) (construing a homeowners' association declaration as a contract); *Chase v. Bearpaw Ranch Ass'n*, 133 P.3d 190, 197 (Mont. 2006) (analyzing a provision for

---

[2]Section 17.8 of the CC&Rs at issue in this case provides:

> Every Person who owns, occupies or acquires any right, title, estate or interest in or to any Unit or other portion of the Property does hereby consent and agree, and shall be conclusively deemed to have consented and agreed, to every limitation, restriction, easement, reservation, condition and covenant contained herein . . . .

Supreme Court
OF
Nevada

(O) 1947A

7

attorney fees included in CC&Rs under principles of contract law); *Diaz v. Ferne*, 120 Nev. 70, 73, 84 P.3d 664, 665-66 (2004) (using contract interpretation rules to interpret CC&Rs).

As *Pinnacle* recognizes, accepting the premise that CC&Rs can impose contractual obligations to which a homeowner assents by purchasing a unit leads to the conclusion that CC&Rs can state agreements to arbitrate, enforceable under the UAA or the FAA. *See* 282 P.3d at 1231 (since "the FAA precludes judicial invalidation of an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses . . . . [i]t stands to reason that the FAA would preempt state decisional law singling out an arbitration clause as the only term in a recorded declaration [of CC&Rs] that may not be regarded as contractual in nature"). There may be defenses to the arbitration agreement—including unconscionability if such can be shown—but the agreement itself exists. Consistent with this general law, both treatises and case law alike have deemed CC&Rs an appropriate repository of an agreement to arbitrate. Thomas H. Oehmke & Joan M. Brovins, 1 *Commercial Arbitration* § 17:10 (3d ed. 2015) (recognizing that "master deed[s]," or declarations, are "good instruments within which to place an arbitration clause" because they are "recorded" and "widely available"); *Graziano v. Stock Farm Homeowners Ass'n*, 258 P.3d 999, 1006-07 (Mont. 2011) (enforcing an arbitration clause in CC&Rs under a contract analysis).

The Homeowners distinguish and would have us reject *Pinnacle* as dependent on California's unique statutory scheme. We disagree, for two reasons. First, close comparison of California's and Nevada's statutory schemes shows them to be far more alike than unalike. The most salient difference appears to be that California has an administrative regulation

Supreme Court
OF
Nevada

(O) 1947A

authorizing CC&Rs to include alternative dispute resolution provisions, *see* Cal. Code Regs., tit. 10, § 2791.8, while Nevada does not. But Nevada statutorily requires mediation of disputes arising under CC&Rs, *see* NRS 38.300-.360, suggesting Nevada's legislative endorsement of alternative dispute resolutions in this setting. Further, NRS 116.2105(2) states, without limitation, "[t]he declaration [of CC&Rs] may contain any other matters the declarant considers appropriate." California had the same provision, Cal. Civ. Code § 1353(b) (West 2007) (repealed 2014), which *Pinnacle* construed as permitting the inclusion of an arbitration clause in CC&Rs. 282 P.3d at 1228-29. Second, if *Pinnacle* were analytically an outlier, there would be other cases holding that arbitration clauses in CC&Rs do not qualify as agreements under the UAA or FAA, but no such authority has been cited or found. We recognize that *Pinnacle* addressed whether a homeowners' association, rather than a homeowner, was bound by the arbitration agreement contained in the CC&Rs. But this is a distinction without a difference because, as the *Pinnacle* court emphasized, the CC&Rs bind the homeowner equally with the homeowners' association. *See id.* at 1226-27; *cf.* NRS 116.41095(2) (providing that, by purchasing property within a common-interest community, a purchaser agrees to be bound by the declaration of CC&Rs).

We are not persuaded that adopting *Pinnacle* will result in parties unwittingly entering into arbitration agreements. Whether to purchase property in a common-interest community is a choice that requires consideration of the CC&Rs, which are binding on the developer, association, and individual owners and reflect the expectations of those buying into the community. Nevada law includes strict notice provisions respecting CC&Rs. *See* NRS 116.4101-.4109. The Homeowners do not

dispute that they received the CC&Rs when they purchased their homes, along with the information statements required by NRS 116.41095. By law, the information statements advised the Homeowners that the "CC&Rs become a part of the title of your property," that the CC&Rs "bind you and every future owner of the property, whether or not you have read them or had them explained to you," and, perhaps most importantly, that the Homeowners had 5 days to cancel the purchase. *See also* NRS 116.4103(1)(l); NRS 116.4108; NRS 116.4109(1)(a); NRS 116.41095. These safeguards ensure that a person who buys a home in a common-interest community will abide by the CC&Rs and can fairly expect that others in the community will do so too.

## III.

Having concluded that the CC&Rs properly included an arbitration agreement, we next consider whether the FAA applies to that agreement. U.S. Home argues that the underlying transactions affect interstate commerce, so the FAA controls. The Homeowners disagree. In their view, the FAA does not apply because the underlying transaction concerns the purchase and sale of individual homes, a local issue that does not affect or involve interstate commerce.

## A.

By its terms, the FAA applies to contracts "evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2 (2012). The word "involving" in the FAA is broad and functionally equivalent to the word "affecting" for purposes of determining the FAA's reach. *Allied-Bruce Terminex Cos. v. Dobson*, 513 U.S. 265, 274-75 (1995). A transaction affects or involves interstate commerce if Congress could regulate the transaction through the Commerce Clause. *See id.* at 273-75, 282. Thus, in *Allied-Bruce Terminix*, the Supreme Court applied the FAA to a dispute between

Supreme Court
OF
Nevada

(O) 1947A

10

a pest-control company and a homeowner over substandard termite-control services, citing the company's multistate presence and the fact that termite-eradication supplies traveled across state lines. *Id.* at 268, 282. Even contracts evidencing intrastate economic activities are governed by the FAA if the activities, when viewed in the aggregate, "substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 556 (1995); *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) ("Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'") (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219 (1948)). So it was that, in *Katzenbach v. McClung*, 379 U.S. 294 (1964), the Supreme Court declared that whether a person could sit at a local lunch counter so substantially affected interstate commerce that Congress could regulate the matter under its Commerce Clause power. *See id.* at 302-05 (upholding as a proper exercise of Commerce Clause powers a statute prohibiting racial discrimination in restaurants, including family-owned Ollie's Barbeque, which did business in one location in Birmingham, observing that local restaurants serve interstate travelers and food that moves through interstate commerce). What this means in the context of arbitration is that "[s]o long as 'commerce' is involved, the FAA applies." *Tallman*, 131 Nev., Adv. Op. 71, 359 P.3d at 121. There must be evidence, however, that interstate commerce was actually involved. *See Allied-Bruce Terminex*, 513 U.S. at 281 (adopting the commerce-in-fact test to determine whether a transaction subject to an arbitration agreement is governed by the FAA).




In applying the commerce-in-fact test, the Supreme Court has interpreted "involving commerce" in 9 U.S.C. § 2 as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Alafabco*, 539 U.S. at 56. And, "[b]ecause the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, within the flow of interstate commerce." *Id.* (internal quotation marks and citations omitted).

B.

In support of their argument that the underlying transaction involves purely intrastate—rather than interstate—commerce, the Homeowners stress that the CC&Rs address residential real estate and that land, unlike money or goods, is traditionally a local concern. But this observation fails to take into account that the CC&Rs were recorded to allow the declarant "to subdivide, develop, construct, market and sell a single family detached residential neighborhood in a common-interest planned community." It also does not account for the CC&Rs' larger purpose: to facilitate the creation and governance of a common-interest community consisting of common areas and multiple homes with stable uses and amenities that protect the purchasers' investments and expectations. The underlying complaint is for construction defects, and the arbitration agreement specifically provides that it governs any dispute between any entity or person "involved in the construction of any [home]." According to the affidavits U.S. Home submitted in district court, multiple out-of-state businesses provided supplies and services in constructing the homes.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

These facts demonstrate that the transactions underlying the CC&Rs' arbitration agreement—the construction and sale of multiple homes by out-of-state contractors using out-of-state supplies and suppliers—affect interstate commerce, meaning the FAA controls. *See Greystone Nev., LLC v. Anthem Highlands Cmty. Ass'n*, 549 Fed. App'x 621 (9th Cir. 2013) (applying the FAA to arbitration agreements contained in PSAs in construction defect litigation arising out of the "development by an out-of-state-developer, construction by an out-of-state contractor, and the sale of homes assembled with out-of-state materials"); *Elizabeth Homes, LLC v. Cato*, 968 So. 2d 1, 4 n.1 (Ala. 2007) ("Evidence that a builder obtained materials and components for a house from out-of-state suppliers is sufficient to establish that a transaction for the construction and sale of a house sufficiently involved interstate commerce for purposes of the FAA."); *Anderson v. Maronda Homes, Inc.*, 98 So. 3d 127, 129-30 (Fla. Dist. Ct. App. 2012) (per curiam) (LaRose, J., specially concurring) (emphasizing that the FAA applies "to contracts for the construction, financing, and sale of homes" when interstate commerce is involved in those transactions) (citing cases); *R.A. Bright Constr., Inc. v. Weis Builders, Inc.*, 930 N.E.2d 565, 569 (Ill. App. Ct. 2010) (holding that evidence demonstrating that an out-of-state supplier provided materials for a building proved the requisite interstate commerce for the arbitration provision to be governed by the FAA); *Zabinski v. Bright Acres Assocs.*, 553 S.E.2d 110, 117-18 (S.C. 2001) (applying the FAA to a land development partnership dispute because, while "the development of land within South Carolina's borders is the quintessential example of a purely intrastate activity . . . the transaction involved interstate commerce as contemplated by the FAA because the partnership utilized out-of-state materials, contractors, and investors");

*Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 226 (Wash. 2009) ("[T]he substantial use of out-of-state materials places the transactions [of purchasing the homes at issue] within the reach of the FAA.").

The cases relied on by the Homeowners and the district court are not to the contrary. They involved the purchase and sale of unimproved land, *see SI V, LLC v. FMC Corp.*, 223 F. Supp. 2d 1059, 1062 (N.D. Cal. 2002), or of a single residence, *see Cecala v. Moore*, 982 F. Supp. 609, 611-12 (N.D. Ill. 1997); *Saneii v. Robards*, 289 F. Supp. 2d 855, 858-59 (W.D. Ky. 2003); *Bradley v. Brentwood Homes, Inc.*, 730 S.E.2d 312, 318 (S.C. 2012), not the construction, development, and governance of a multi-unit residential community.

## IV.

Because it has been established that the CC&Rs evidenced transactions involving interstate commerce, the FAA applies. The Supreme Court has made unmistakably clear that, when the FAA applies, it preempts state laws that single out and disfavor arbitration. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). Applying state law, the district court invalidated the CC&Rs' arbitration agreement as procedurally and substantively unconscionable. The district court did not consider whether the FAA preempted its unconscionability determination, because it erroneously determined that the underlying transactions only involved intrastate commerce, such that the FAA did not apply. The final question we must consider, then, is whether the FAA preempts the bases for the district court's decision to invalidate the arbitration agreement in the CC&Rs as unconscionable.

### A.

Our analysis begins with the FAA. It provides that an arbitration agreement is "valid, irrevocable, and enforceable, save upon

 

such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). Under the FAA, "[s]tates may regulate contracts, including arbitration clauses, under general contract law principles," which include fraud, duress, and unconscionability. *Allied-Bruce*, 513 U.S. at 281; *see also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). What a state may not do is "decide that a contract is fair enough to enforce all of its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce*, 513 U.S. at 281. This is true whether the state law is of judicial or legislative origin. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Doctor's Assocs.*, 517 U.S. at 685 (reaffirming the *Perry* holding). Under the FAA, a state must place arbitration provisions on the same footing as other contractual provisions rather than "singling out arbitration provisions for suspect status." *Doctor's Assocs.*, 517 U.S. at 687.

FAA-preempted state laws generally fall into two categories. First, the FAA preempts state laws that outright prohibit arbitration of a specific claim. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011); *see Doctor's Assocs.*, 517 U.S. at 687 ("Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions."). Second, FAA preemption arises when a "doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Concepcion*, 563 U.S. at 341. In assessing this second type of law, "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.'" *Id.* (alteration in original) (quoting *Perry*, 482 U.S. at 492 n.9).

 

Such laws may be preempted by the FAA even though they do not mention arbitration, if they rely on the defining features of an arbitration as the basis for invalidating the agreement. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. ___, 137 S. Ct. 1421, 1426 (2017) ("The Act also displaces any rule that covertly accomplishes the same objective [of discriminating against arbitration] by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements."). For example, the FAA preempts laws that invalidate an arbitration agreement as unconscionable for failing to provide for judicially monitored discovery, not heeding the Federal Rules of Evidence, or not affording a right to jury trial. *Concepcion*, 563 U.S. at 341-42.

## B.

Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable. *See Burch v. Second Judicial Dist. Court*, 118 Nev. 438, 443, 49 P.3d 647, 650 (2002) ("Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable."). Here, the district court deemed the CC&Rs' arbitration agreement procedurally unconscionable, first, because it was inconspicuous and, second, because it abrogated procedural rights provided under NRS Chapter 40. *See D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004) (discussing procedural unconscionability and providing that it generally involves the failure to reasonably inform a person of a contract's consequences). U.S. Home asserts that the rules relied on by the district court and the Homeowners are preempted by the FAA. We agree.

The district court deemed the CC&Rs' arbitration agreement fatally inconspicuous because it was written using the same size type as the

Supreme Court
of
Nevada

(O) 1947A

16

rest of the CC&Rs, not bolded or capitalized, and it did not "draw an average homebuyer's attention to the waiver of important legal rights." *See id.* at 556, 96 P.3d at 1164 (invalidating an arbitration clause for procedural unconscionability in part because "nothing drew attention to the arbitration provision"). If the arbitration clause were actually inconspicuous—that is to say, in smaller print than the rest of the CC&Rs or buried in an endnote or exhibit—this argument might have merit. *See Tandy Computer Leasing v. Terina's Pizza, Inc.*, 105 Nev. 841, 844, 784 P.2d 7, 8 (1989) (invalidating a forum selection clause because it was in very fine print, was on the back of the agreement while the signature lines were on the front of the agreement, and was buried in a paragraph labeled "miscellaneous"). But here no such infirmity appears. The arbitration provision is in the same size font as the other provisions in the CC&Rs. Requiring an arbitration clause to be more conspicuous than other contract provisions, *D.R. Horton*, 120 Nev. at 557, 96 P.3d at 1164 ("to be enforceable, an arbitration clause must at least be conspicuous"); *see also Gonski v. Second Judicial Dist. Court*, 126 Nev. 551, 559, 245 P.3d 1164, 1170 (2010) (same), is exactly the type of law the Supreme Court has held the FAA preempts because it imposes stricter requirements on arbitration agreements than other contracts generally. In *Doctor's Associates v. Casarotto*, the Court invalidated a Montana statute declaring an arbitration clause unenforceable unless the first page of the contract stated in typed and underlined capital letters that the contract was subject to arbitration, because it governed "not 'any contract' but specifically and solely contracts 'subject to arbitration' [and thus] conflicts with" and is preempted by the FAA. 517 U.S. at 683, 687 (citing 9 U.S.C. § 2). Similar to the first-page, all-capital-letter, underlined notice-of-arbitration statute struck down in

*Doctor's Associates*, the "conspicuousness" requirement applied by the district court to invalidate the arbitration clause in the CC&Rs singles out and disfavors arbitration and thus is preempted by the FAA.

The Homeowners next assert—and the district court found—that the CC&Rs' arbitration agreement is unconscionable because it abrogates procedural rights provided by NRS Chapter 40 by "requiring different timelines and/or additional procedures to bring construction defect claims." *See Gonski*, 126 Nev. at 560, 245 P.3d at 1170 (invalidating an arbitration agreement in part because it failed to notify the parties "that they were agreeing to forego important rights under Nevada law"). Specifically, the district court faulted the CC&Rs' arbitration agreement for requiring that "the arbitration hearing is to be convened no later than one hundred eighty (180) days from the date the arbitrator is appointed," an expedited "timeline and procedure . . . not mandated under NRS Chapter 40." But giving up procedural rights provided by other laws is a "defining feature[ ]" and a "primary characteristic" of arbitration. *Kindred*, 581 U.S. at ___, 137 S. Ct. at 1426-27. The FAA protects arbitration agreements from invalidation on the grounds that they trade the procedural protections litigation affords for the more streamlined process arbitration provides. So it was that, in *Concepcion*, the Supreme Court reversed a state court decision invalidating as unconscionable an arbitration agreement that prohibited class arbitration. 563 U.S. at 338. It held that the FAA preempted the state's unconscionability determination because requiring class arbitration was inconsistent with the FAA's object of "ensur[ing] the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344.

 

Nearly all arbitration agreements forgo some procedural protections, such as the right to a trial by jury or court-monitored discovery. *See id.* at 341-42 (noting that the FAA would preempt a state law invalidating as procedurally unconscionable an arbitration agreement requiring waiver of the rights to judicially monitored discovery or a jury trial). The FAA and UAA suggest that public policy favors such waivers in the arbitration setting because arbitration provides a quicker and less costly means for settling disputes. Thus, although the rule that an abrogation of other legal rights makes a clause procedurally unconscionable arguably applies to any contractual clause, "[i]n practice, of course, the rule would have a disproportionate impact on arbitration agreements." *Id.* at 342.

The FAA preempts the only bases on which the district court and the Homeowners relied to establish procedural unconscionability. We do not address substantive unconscionability, since both must exist to invalidate a contract as unconscionable. *See Burch*, 118 Nev. at 443, 49 P.3d at 650.

## V.

Although CC&Rs are not conventional two-party contracts, they create contractual obligations that bind the parties subject to them. In this case, the CC&Rs bound the Homeowners to arbitrate their construction defect claims against the developer. And, because the CC&Rs in this case evidence "transaction[s] involving commerce," 9 U.S.C. § 2, the FAA controls. To the extent our holdings in *D.R. Horton* and *Gonski* regarding the unconscionability of arbitration agreements disfavor arbitration in cases controlled by the FAA, they are overruled because they do not establish rules that "exist at law or in equity for the revocation of *any*

 

contract." 9 U.S.C. § 2 (emphasis added). Rather, the procedural unconscionability rules established in those cases either apply only to arbitration agreements or, in practice, have a disproportionate effect on arbitration agreements. Because the district court relied on these preempted rules to find that the CC&Rs' arbitration agreement was unconscionable, we reverse and remand for entry of an order directing the parties to arbitration in accordance with the CC&Rs.

_____, J.
Pickering

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich