# IN THE SUPREME COURT OF THE STATE OF NEVADA

U.S. HOME CORPORATION, A
DELAWARE CORPORATION,
Appellant,
vs.
RACAL LANIER, INDIVIDUALLY; THE
MICUA FAMILY TRUST DATED JULY
5, 2006; BENIGNO B. MOLINA LIVING
TRUST; EDWARD P. TUASON;
AZUCENA C. TUASON; AND DENNIS
WILLIAMS, II, INDIVIDUALLY,
Respondents.

No. 68692

FILED

NOV 28 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court order denying a motion to compel arbitration. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

The underlying construction defect action concerns five single-family homes developed by appellant U.S. Home Corporation that are located in the housing development known as Harmony.[1] U.S. Home is a residential developer incorporated in Delaware that developed the individual residences within Harmony. Respondent Homeowners entered into one of two versions of U.S. Home's purchase and sale agreements (PSAs) containing arbitration provisions for the construction and sale of these individual homes.

---

[1]There were originally fifteen plaintiff homeowners, or homeowner groups, that were included in the complaint alleging construction defect. For reasons that are unclear from the record, U.S. Home only moved to compel five of those plaintiffs—the respondents on appeal—to arbitrate based on the arbitration provisions in the two PSAs. Thus, references to the Homeowners are limited to the five current respondents.

The Homeowners subsequently filed a complaint against U.S. Home, as a result of multiple alleged construction defects located within the single family residences and common areas in the Harmony development. U.S. Home, in turn, moved to compel arbitration, arguing that the Federal Arbitration Act (FAA) mandates enforcement of the arbitration provisions in the PSAs and that it preempted any state laws to the contrary. It further argued that the arbitration provisions were neither procedurally nor substantively unconscionable. In an amended order,[2] the district court denied U.S. Home's motion, finding that the FAA did not apply because real estate transactions are typically intrastate and thus do not implicate interstate commerce, and that the arbitration provisions were procedurally and substantively unconscionable.

On appeal, U.S. Home argues that the FAA governs the arbitration agreements, and thus, the agreements must be enforced against respondents.[3] It further argues that the district court erred by concluding

[2]The amended order corrected "a typographical error" contained in the original order, changing "conscionable" to "unconscionable."

[3]U.S. Home also argues that an arbitrator should decide the enforceability of the arbitration provisions in the PSAs as the PSA's contain a delegation clause giving the arbitrator that authority. As U.S. Home did not raise this argument below, we decline to consider it on appeal. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (deeming waived any issue that was not raised before the district court); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 75-76 (2010) (refusing to review delegation-clause argument first raised on appeal); *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev., Adv. Op. 25 n.1, 415 P.3d 32, 35 n.1 (2018) (same). U.S. Home further argues that the FAA applies pursuant to language in the PSAs, and that the Homeowners concede this issue by failing to address it in their answering brief. The Homeowners fail to respond to U.S. Home's assertion regarding the choice-of-law provision in the PSAs, and thus, this arguably constitutes a confession of error. *See Polk*

SUPREME COURT
OF
NEVADA

(O) 1947A

that the agreements were unconscionable. Conversely, the Homeowners argue that U.S. Home failed to meet its burden that there were enforceable agreements as to two of the Homeowners, and that in any case, U.S. Home failed to present evidence that the transactions involved interstate commerce, as the FAA is not otherwise implicated in state constructional defect claims. We agree with U.S. Home and reverse.

Orders deciding motions to compel arbitration typically involve mixed questions of law and fact. *Gonski v. Second Judicial Dist. Court*, 126 Nev. 551, 557, 245 P.3d 1164, 1168 (2010), *overruled on other grounds by Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d 32 (2018). "The district court's factual findings are given deference, but questions purely of law are reviewed de novo." *Id.*

*The FAA applies*

The FAA was enacted in 1925 to address the judicial hostility toward arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). In order for the FAA to apply, there must be (1) a contract (2) evidencing a transaction that involves commerce. 9 U.S.C. § 2 (2012); *see Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d at 38 (holding that the underlying arbitration agreement between homeowners and developers must evidence interstate commerce in order for the FAA to apply). Here, both elements are satisfied.

---

*v. State*, 126 Nev. 180, 184-85, 233 P.3d 357, 360 (2010) (failure to address an issue on appeal may result in a determination of confession of error). Nevertheless, as explained below, the transaction at issue constitutes interstate commerce, such that the FAA applies. Thus, we need not address the choice-of-law argument raised by U.S. Home to dispose of this case.

*There was a valid contract*

Regarding the requirement of a contract, there is evidence in the record to support the determination that there was a valid contract as to all of the Homeowners. U.S. Home only produced the first page of the PSA allegedly executed by Racal Lanier, and did not produce an executed PSA for Edward and Azucena Tuason. U.S. Home did provide, however, a declaration from the customer care manager for U.S. Home's Las Vegas Division. That declaration explained that the PSA signed by the Tuasons would have been presented to them at closing, and that the amendment to escrow instruction, signed by the Tuasons, demonstrated that they received and signed the PSA. Moreover, the page produced for Lanier was initialed, and all of the PSAs contain substantively identical language. Even if this were insufficient, however, the Homeowners are still precluded from raising the defense that a signed document has not been produced based on the theory of estoppel. *See Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 637, 189 P.3d 656, 661 (2008) (holding that under a theory of estoppel, a buyer cannot seek to enforce contractual rights and at the same time avoid the contract's requirement that any dispute arising out of the contract be arbitrated). In their complaint, the Homeowners—including those for whom U.S. Home failed to provide the entire PSAs—asserted breach of contract, breach of express and implied warranties, negligence and negligence per se, and breach of implied warranty of habitability, against U.S. Home. As a result, we reject the Homeowners contentions in this regard.

*The contract evidences interstate commerce*

Regarding the issue of whether the transaction evidences interstate commerce, the United States Supreme Court has held that the FAA was intended to "signal the broadest permissible exercise of Congress'

 

Commerce Clause power," *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003), and the FAA will apply so long as there is evidence that interstate commerce was involved in the transaction underlying the arbitration agreement. *See Allied-Bruce Terminex Cos. v. Dobson*, 513 U.S. 265, 281-82 (1995); *see also Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d at 38. This "commerce in fact" test can be satisfied if the transactions, in the aggregate, affect commerce. *Alafabco*, 539 U.S. at 56-57.

In *Ballesteros*, this court applied the *Alafabco* framework to hold that the "facts demonstrate[d] that the transactions underlying the CC&Rs' arbitration agreement . . . affect interstate commerce." 134 Nev., Adv. Op. 25, 415 P.3d at 39. *Ballesteros* highlighted the fact that "the construction and sale of multiple homes [were] by out-of-state contractors using out-of-state supplies and suppliers," and took into account the "CC&Rs' larger purpose: to facilitate the creation and governance of a common-interest community consisting of common areas and multiple homes with stable uses and amenities that protect the purchasers' investments and expectations," as well as the fact that "[t]he underlying complaint is for construction defects." *Id.* at 39.

Here, the district court found that

> the construction and sale of the homes were all completed within the state of Nevada – the construction defect claims arose out of workmanship/installation issues within the state of Nevada, the land located in the state of Nevada, etc. All of the legal relationships concerning the land are bound by state law principles. Single residential real estate transactions of the type presented in this case have no substantial or direct connection to interstate commerce. For these reasons, logic suggests such transactions are not among those considered as involving interstate

SUPREME COURT
OF
NEVADA

(O) 1947A

commerce. This Court concludes that the FAA does not apply to the arbitration agreements because the construction defect claims at issue relate to real property contained entirely within the state of Nevada[.]

We conclude that the district court's finding "adheres to an improperly cramped view of Congress' Commerce Clause power,"[4] *See Alafabco*, 539 U.S. at 58, and that the transaction at issue is subject to the FAA for several reasons. First, U.S. Home is a Delaware Corporation. Thus, there is at least one party—the main defendant no less—that is domiciled outside of Nevada. *Ballesteros*, Adv. Op. 25, 415 P.3d at 39 (noting when determining that the FAA applied that "out-of-state businesses provided supplies and services in constructing the homes"). Second, the Homeowners' complaint included "Does 1 to 500" as defendants, which the Homeowners alleged were

> responsible in some manner for the defective and negligent engineering, architecture, construction, supply of improper materials, and inspection of the subject property single family homes, or in some other actionable manner were an integral part of the chain of development, construction and marketing of [these] homes.

---

[4]The district court and the Homeowners cite to a few cases suggesting that the FAA does not apply to arbitration in real estate transactions. However, these cases all suffer from the same error that occurred in the district court finding here—they "adhere[ ] to an improperly cramped view of Congress' Commerce Clause power." *Alafabco*, 539 U.S. at 58. In addition, as noted in *Ballesteros*, they either involved the purchase and sale of unimproved land, or of a single residence. 134 Nev. Adv. Op. 25, 415 P.3d at 39 (distinguishing cases).

 

The likelihood that all of these unnamed defendants perform purely intrastate work, and obtain the materials necessary to perform their duties solely intrastate, is exceedingly small. *See Greystone Nev., LLC v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 624 (9th Cir. 2013) (holding that the FAA applied to arbitration clauses in the homeowners' purchase and sale agreements because "those agreements 'evidenc[e] a transaction'—development by an out-of-state developer, construction by an out-of-state contractor, and the sale of homes assembled with out-of-state materials—'involving commerce.'" (alteration in original) (quoting 9 U.S.C. § 2 (2012)); *Wise v. Tidal Constr. Co.*, 583 S.E.2d 466, 469 (Ga. Ct. App. 2003) ("Home construction generally involves interstate commerce, because most building materials pass in interstate commerce."); *see also Episcopal Hous. Corp. v. Fed. Ins. Co.*, 239 S.E.2d 647, 652 (S.C. 1977) ("It would likely be virtually impossible to construct an eighteen (18) story apartment building between 1971 and 1973 with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina."). Indeed, U.S. Home's third-party complaint includes the names of some defendants that are likely not from Nevada, including "Chicago Painting, Inc." and "General Electric Company."

Lastly, "were there any residual doubt about the magnitude of the impact on interstate commerce caused by the particular economic transactions in which the parties were engaged," *Alafabco*, 539 U.S. 57-58, in the aggregate, the general practice of developing, buying, and selling homes substantially affects interstate commerce. *See Wickard v. Filburn*, 317 U.S. 111, 125 (1942) (providing that even if a certain activity is local and "may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate

 

commerce ...."); *Slingluff v. Occupational Safety & Health Review Comm'n*, 425 F.3d 861, 867 (10th Cir. 2005) ("[T]he economic activity of stuccoing/construction, as an aggregate, affects interstate commerce."); *cf. Russell v. United States*, 471 U.S. 858, 862 (1985) ("We need not rely on the connection between the market for residential units and the interstate movement of people to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market ...." (internal quotation marks omitted)). For the foregoing reasons, we conclude that the FAA governs the arbitration agreements at issue.

*The arbitration provisions were not unconscionable*

"The Supreme Court has made unmistakably clear that, when the FAA applies, it preempts state laws that single out and disfavor arbitration." *Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d at 40 (citing *Concepcion*, 563 U.S. at 341. Thus, where federal law controls an arbitration agreement, a state may not interpret general contract principles in a manner that disfavors the arbitration provisions or places arbitration provisions on a different footing than the rest of the general contract. *See id.*

*Ballesteros* sets out the applicable test in cases, such as the instant matter, where the FAA applies. *See Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d at 40. In that case, the district court found an arbitration agreement unconscionable "first, because it was inconspicuous and, second, because it abrogated procedural rights provided under NRS Chapter 40." *Id. at* Adv. Op. 25, 415 P.3d at 41. More specifically, the district court deemed the agreement "fatally inconspicuous because it was written using the same size type as the rest of the CC&Rs, not bolded or capitalized, and it did not draw an average homebuyer's attention to the waiver of important legal rights." *Id.* (internal quotation marks omitted). It further found that

the arbitration agreement was unconscionable "because it abrogate[d] procedural rights provided by NRS Chapter 40 by requiring different timelines and/or additional procedures to bring construction defect claims." *Id.* (internal quotation marks omitted).

This court reversed the district court order, holding that "[r]equiring an arbitration clause to be more conspicuous than other contract provisions . . . is exactly the type of law the Supreme Court has held the FAA preempts because it imposes stricter requirements on arbitration agreements than other contracts generally." *Id.* It further held that "giving up procedural rights provided by other laws is a defining feature and a primary characteristic of arbitration," *id.* at Adv. Op. 25, 415 P.3d at 41 (internal quotation marks and citations omitted), and that "[t]he FAA protects arbitration agreements from invalidation on the grounds that they trade the procedural protections litigation affords for the more streamlined process arbitration provides." *Id.* It further reasoned that "[n]early all arbitration agreements forgo some procedural protections," and while a rule making such an abrogation unconscionable "arguably applies to any contractual clause, [i]n practice, of course, the rule would have a disproportionate impact on arbitration agreements." *Id.* at Adv. Op. 25, 415 P.3d at 42 (second alteration in original) (internal quotation marks omitted); *see also Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013). As the FAA preempted "the only bases on which the district court and the Homeowners relied to establish . . . unconscionability," this court reversed and remanded for an order directing the parties to arbitrate. *Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d at 42.

The bases for denying U.S. Home's motion to compel arbitration are substantively identical to those found in *Ballesteros*. Relying on *D.R. Horton* and *Gonski*, the district court found that both versions of the arbitration provisions were procedurally unconscionable, as they were inconspicuous and lacked clarity. Specifically, the district court found that the arbitration provisions were (1) "buried in the middle of the PSAs;" (2) "in the same font size and type as all of the other provisions of the PSA, such that no attention is drawn specifically to the arbitration provisions;" and (3) there [was] nothing to draw attention for the average home buyer of the important rights being waived." Regarding clarity, the district court found that "[t]he arbitration provisions do not clearly state that the purchaser is waiving his right to a jury trial, nor does it mention any impact on the purchaser's substantial rights under NRS Chapter 40." Largely relying on *D.R. Horton* and *Gonski*, the district court also found that the arbitration provisions were substantively unconscionable, as they were "impermissibly one-sided." Specifically, the district court found that the arbitration provisions require that (1) the costs of mediation and arbitration be borne equally by the U.S. Home and the Homeowners; (2) the "[H]omeowners are responsible for their own costs in mediation and arbitration (implicitly responsible for their own attorney[] fees;" (3) "the Chapter 40 rights to recovery of fees and costs is also abrogated and/or waived;" (4) only U.S. Home, and not the Homeowners, has the option "to include subcontractors and suppliers in mediation and arbitration."

The law that the district court relied upon in determining that procedural unconscionability existed impermissibly "[r]equir[es] an arbitration clause to be more conspicuous than other contract provisions" and "is exactly the type of law the Supreme Court has held the FAA

preempts because it imposes stricter requirements on arbitration agreements than other contracts generally." *Ballesteros*, 134 Nev., Adv. Op. 25, 415 P.3d at 41. Regarding the district court's basis for substantive unconscionability, "giving up procedural rights provided by other laws is a defining feature and a primary characteristic of arbitration." *Id.* at Adv. Op. 25, 415 P.3d at 41 (internal quotation marks and citations omitted). Thus, laws holding that arbitration provisions which include a waiver of certain rights afforded by Chapter 40 including different rules for attorney fees and costs, and joinder of third-parties, "[i]n practice, of course, . . . would have a disproportionate impact on arbitration agreements." *Id.* at Adv. Op. 25, 415 P.3d at 42 (internal quotation marks omitted); *see also Concepcion*, 563 U.S. at 339; *Mortensen*, 722 F.3d at 1159. Thus, both of the district court's bases for determining unconscionability are preempted by the FAA, leaving no other grounds upon which to find the arbitration agreements at issue unconscionable.[5] As a result, we conclude that the district court erred in denying U.S. Home's motion to compel arbitration.

---

[5]As this issue is dispositive, we need not address U.S. Home's additional arguments regarding severance.

Accordingly, we

ORDER the judgment of the district court REVERSED and REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:  Hon. Timothy C. Williams, District Judge
     Ara H. Shirinian, Settlement Judge
     Payne & Fears LLP
     Shinnick, Ryan & Ransavage P.C.
     Eighth District Court Clerk

