139 Nev., Advance Opinion 47

## IN THE SUPREME COURT OF THE STATE OF NEVADA

TOUGH TURTLE TURF, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
BRYAN SCOTT, INDIVIDUALLY AND
AS MANAGER AND/OR OWNER OF
FOXTAIL TURF, LLC; BRANDON
DEGREGORIO; AND VINCENT
SAGER,
Respondents.

No. 85249

FILED

NOV 02 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a preliminary injunction. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Reversed and remanded with instructions.*

Snell & Wilmer, LLP, and Kelly H. Dove, Dawn L. Davis, and Morgan T. Petrelli, Las Vegas,
for Appellant.

Sylvester & Polednak, Ltd., and Allyson R. Johnson and Kelly L. Schmitt, Las Vegas,
for Respondents.

BEFORE THE SUPREME COURT, CADISH, PICKERING, AND BELL, JJ.

23-35608

*OPINION*

By the Court, PICKERING, J.:

Appellant Tough Turtle Turf, Inc., sought a preliminary injunction from the district court enforcing a noncompete covenant against respondents, three of its former employees. The court denied Tough Turtle's request on the basis the covenant was unenforceable due to procedural unconscionability. Because we conclude that there was minimal procedural unconscionability and that the district court was otherwise obligated to determine whether the covenant's remaining flaws could be cured by revision under NRS 613.195(6), we reverse the district court's order and remand for further consideration.

I.

At the time of each respondent's hiring, Tough Turtle was a subsidiary of a California-based company and classified respondents as independent contractors. When Tough Turtle bought out its previous owner's stake in the company, respondents were reclassified as employees and filled out accompanying paperwork, which did not include a noncompete covenant. Several years later, Tough Turtle's human resources provider sent another round of paperwork to respondents, including an employee handbook, various company policies, and an employment agreement. Each paragraph of the agreement was separately numbered and began on a new line with a heading in the same typeface, font, and size as the text of the paragraph, except for the paragraph labeled "Non-Competition." That paragraph, the source of the disputed noncompete covenant, was merged with the preceding paragraph, such that it did not start on a new line. It was also numbered "12," even though the following

SUPREME COURT
OF
NEVADA

(O) 1947A

paragraph was also numbered "12." Respondents each signed the agreement.

Several months later, respondent Bryan Scott allegedly began a new company, Foxtail Turf, for which respondent Brandon DeGregorio and respondent Vincent Sager occasionally moonlighted while maintaining their jobs with Tough Turtle. Tough Turtle began hearing from customers that Foxtail salespersons were pitching their familiarity with Tough Turtle's products and pricing structure and promising a better deal. Around this time, Scott resigned from Tough Turtle. DeGregorio and Sager were subsequently fired from Tough Turtle.

Tough Turtle sued respondents and others, including Tough Turtle's turf supplier, Turf Envy. Before these complaints were consolidated, Tough Turtle filed an ex parte application for a temporary restraining order against Turf Envy, which the district court treated as a motion for a preliminary injunction. Because an injunction would essentially enforce respondents' noncompete covenants with Tough Turtle, respondents filed a supplemental brief arguing against the injunction, asserting that the covenant was unconscionable and that Tough Turtle had unclean hands.

After a seven-day evidentiary hearing, the district court concluded that the noncompete covenant was unenforceable because the employment agreement merged the noncompete provision into the preceding paragraph rather than setting it out as its own separate paragraph, thereby calling into question whether the employees could readily ascertain its terms. The court also found that the noncompete covenant was "overbroad, oppressive, one-sided in favor of [Tough Turtle], and exceed[ed] [the] scope of what [was] necessary to protect [Tough

Turtle]'s interests." But the court declined to modify the covenant, stating it could not "be redrafted by the court in a manner to allow for injunctive relief." Tough Turtle appeals, asking the court to reverse the portion of the order denying injunctive relief as to the noncompete provision.

## II.

### A.

When considering whether a contract is unconscionable, courts generally require a showing of both procedural and substantive unconscionability. 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 2023); *Burch v. Second Judicial Dist. Court,* 118 Nev. 438, 443, 49 P.3d 647, 650 (2002). A contract clause "is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton, Inc. v. Green,* 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.,* 134 Nev. 180, 415 P.3d 32 (2018). Substantive unconscionability concerns the "contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy." 8 *Williston on Contracts, supra,* at § 18:10. Unconscionability is evaluated on a sliding scale; if one type of unconscionability is greater, the other may be lesser. *Burch,* 118 Nev. at 444, 49 P.3d at 650.

Here, the district court invalidated the noncompete covenant, finding that it was a "fatal" error to place the covenant where it could be easily overlooked, which made it procedurally unconscionable and therefore

Supreme Court
OF
Nevada

(O) 1947A

4

unenforceable as a matter of law. We cannot agree. The employment agreement used the same font size throughout. *See Ballesteros*, 134 Nev. at 190-91, 415 P.3d at 40-41 (concluding that an arbitration provision was not procedurally unconscionable where it was in the same font size as the other provisions and not buried in an endnote). And, while respondents complain that the agreement was one of several documents attached to a single email, they failed to show that they did not have a meaningful opportunity to review the agreement or that, when they signed and returned the employment agreement, they did not in fact assent to all of its terms, including the restrictive covenant. *See* 7 Joseph M. Perillo, *Corbin on Contracts* § 29.9, at 404 (rev. ed. 2002) (noting that procedural unconscionability may overcome the duty-to-read rule when the former suggests "there was in fact no intentional or apparent manifestation of assent to the document or the term or terms in question"); *see also FQ Men's Club, Inc. v. Doe Dancers I*, Case No. 79265, 2020 WL 5587435, at *3 (Nev. Sept. 17, 2020) (upholding finding of procedural unconscionability where the employer required immediate signatures in hectic circumstances that did not give the employees a meaningful opportunity to understand what they were signing). Any procedural unconscionability stemming from the merger of the noncompete covenant into the preceding paragraph of the employment agreement is not enough to invalidate it without an additional showing of substantive unconscionability.

In its written order, the district court concluded that not only was the covenant procedurally unconscionable but it was also overbroad, oppressive, excessive in scope, and one-sided in Tough Turtle's favor. But the district court did not analyze the covenant under NRS 613.195(1) and (6), which govern the enforceability of and court revision to noncompete

covenants, instead simply stating that it was unable to "redraft" the covenant. We agree with the district court that the noncompete covenant is overbroad in its geographic scope at minimum and, therefore, is substantively unconscionable as written. But if the noncompete covenant is modifiable so that it is no longer overbroad, the noncompete covenant would not be substantively unconscionable and, thus, would be enforceable.

B.

Whether the noncompete covenant is modifiable turns on the interpretation of NRS 613.195(6), a question reviewed de novo. *S. Nev. Homebuilders Ass'n v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). We give a statute's terms their plain meaning. *Id.* All provisions are considered together so as not to render any part of the statute superfluous. *Id.* Under the whole-text canon, we "interpret provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of [the] statutes." *Id.* (internal quotation marks omitted); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (stating the whole-text canon as the rule that "[t]he text must be construed as a whole" and noting that "[p]erhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts").

The Legislature added NRS 613.195(6)[1] in response to *Golden Road Motor Inn, Inc. v. Islam*, which held that a district court may not

---

[1]This provision was numbered NRS 613.195(5) when originally enacted in 2017. *See* 2017 Nev. Stat., ch. 324, § 1, at 1861. In 2021, the

SUPREME COURT
OF
NEVADA

(O) 1947A

modify an unreasonable noncompete covenant. 132 Nev. 476, 483, 376 P.3d 151, 156 (2016). NRS 613.195(6) provides that a district "court shall revise . . . to the extent necessary" a covenant that unreasonably limits time, geographical area, or scope of activity; imposes a greater restraint than is necessary to protect the employer; or imposes undue hardship on the employee. This provision overruled *Golden Road*'s holding that an unreasonable noncompete covenant can *never* be revised.

Tough Turtle essentially argues that, under the post-*Golden Road* NRS 613.195(6), a district court must *always* modify an overbroad noncompete covenant, so long as the covenant is supported by valuable consideration. And because the district court must always modify, Tough Turtle continues, it must always enforce a noncompete covenant, regardless of any procedural unconscionability. But this does not account for NRS 613.195(1). Subsection (1) conflicts with Tough Turtle's reading of subsection (6) in that it provides that "[a] noncompetition covenant is void and unenforceable" if it imposes a "restraint that is greater than is required for the protection of the employer[; i]mpose[s] any undue hardship on the employee[; or i]mposes restrictions that are [not] appropriate in relation to the valuable consideration supporting the noncompetition covenant." For the reasons discussed below, we conclude that NRS 613.195(1) and (6), taken together, do not require a district court to always modify an overbroad noncompete covenant; however, the district court must modify an overbroad noncompete covenant when possible. Because the district court failed to

___

Legislature renumbered it as NRS 613.195(6) but left the pertinent language intact. *See* 2021 Nev. Stat., ch. 77, § 22.5, at 315.

properly analyze whether the noncompete covenant could be revised under NRS 613.195(6) in this case, we must reverse and remand.[2]

Courts may refuse to modify a contract that is "so lacking in the essential terms" that the court would have to provide them. *Ins. Ctr., Inc. v. Taylor*, 499 P.2d 1252, 1256 (Idaho 1972); *see also Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 719 N.E.2d 1141, 1149 (Ill. App. Ct. 1999) (refusing to modify a noncompete provision because the "drastic modifications" required to make it enforceable "would be tantamount to fashioning a new agreement"); *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1172-73 & n.19 (Okla. 1989) (refusing to modify a noncompete covenant because the defects were so substantial that the covenant "would have to be rewritten" and would require "the making of a new contract"). This accords with the general rule prohibiting courts from creating new contracts for parties. *Cent. Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 37 (Tenn. 1984) (citing Samuel Williston & Arthur L. Corbin, *On the Doctrine of* Beit v. Beit, 23 Conn. B.J. 40, 49-50 (1949)). NRS 613.195(6) does not change these or other fundamental precepts of contract law. It nonetheless mandates judicial revision of a restrictive covenant if this can be done without subjecting employees to unreasonable terms. *See Taylor*, 499 P.2d at 1255-56; *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 844 (Mo. 2012).

The federal district court considered NRS 613.195(6) in *Paws Up Ranch, LLC v. Martin*, concluding that once a covenant is found

---

[2]We reject respondents' request that we affirm based on the unclean hands doctrine. The district court did not address respondents' unclean hands defense, which raises factual and legal issues that are for the district court to resolve in the first instance.

unenforceable as written, it then becomes the court's, rather than the parties', responsibility under NRS 613.195(6) to draft a reasonable noncompete covenant, "revising, creating and defining the contours of the right to be enforced." 463 F. Supp. 3d 1160, 1168 (D. Nev. 2020). We are not persuaded by this approach. *See Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 633, 748 P.2d 494, 500 (1987) (noting that federal district court decisions are not binding on this court). If courts had a modification power that extended all the way to drafting a new contract, it would cross the line from the permissible modification of an existing noncompete covenant into the impermissible creation of a new contract for the parties. As discussed above, other courts have rejected the idea that modification goes that far.

NRS 613.195(6) calls for a court to "revise" the noncompete covenant—not to rewrite or redraft it. When the Legislature amended NRS 613.195 in 2021, it left subsection (1) intact. 2021 Nev. Stat., ch. 77, § 22.5, at 314-15. Under subsection (1), noncompete covenants with the same overbreadth issues described in subsection (6) are "void and unenforceable." Reading subsection (1) harmoniously with subsection (6) indicates that there are instances when a noncompete covenant will be unenforceable, such as when no valuable consideration supports the noncompete covenant or when the court would need to rewrite rather than revise the noncompete covenant. But overbreadth alone will not render the covenant unenforceable if the restrictions can be modified under subsection (6) so that they are reasonable and do not impose an undue hardship on the employee or a restraint greater than necessary for the employer's protection.

## CONCLUSION

We reverse and remand. The district court erred by invalidating the covenant based on procedural unconscionability and in

SUPREME COURT
OF
NEVADA

(O) 1947A

failing to adequately consider whether the overbroad scope of the covenant could be modified. On remand, the district court must determine whether it can modify the covenant under NRS 613.195(6). If the noncompete covenant is modifiable, then the court should revise the covenant so that it is reasonable under NRS 613.195(1).

_____, J.
Pickering

We concur:

_____, J.
Cadish

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A